**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

**JOAO FRANGANITO**, individually and on behalf of others similarly situated,

Plaintiff,

vs.

**CARBEL LLC, WORLDSTAFF USA TRI-STATE LLC**, **JUAN ALONSO,** and **ERIKA MEJIA,**

Defendants.

First Amended Complaint - Class Action

Jury Trial Demanded

Civil Case No.: 5:25-cv-04784-JFL

**FIRST AMENDED COLLECTIVE AND CLASS ACTION COMPLAINT WITH JURY DEMAND**

Plaintiff Joao Franganito, individually and on behalf of all others similarly situated, by and through his attorneys, Brown, LLC, hereby brings this First Amended[1] Collective and Class Action Complaint against WorldStaff USA Tri-State LLC ("WorldStaff"), Carbel LLC ("Carbel"), Juan Alonso, and Erika Mejía (collectively, "Defendants"), and alleges of his own knowledge and conduct and upon information and belief as to all other matters, as follows:

## INTRODUCTION

1. Plaintiff Joao Franganito ("Plaintiff") brings this action for himself and all other similarly situated hourly-paid employees of WorldStaff and/or Carbel to recover unpaid overtime wages, liquidated damages, interest, and reasonable attorneys' fees and costs as a result of Defendants' willful violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, et seq., and attendant regulations at 29 C.F.R. § 516, *et seq*.

2. Plaintiff also brings this action for himself and on behalf of all other similarly

[1] Filed as of right pursuant to Fed. R. Civ. P. 15(a)(1), which applies because Defendants have not yet been served with the complaint or filed a responsive pleading.

situated hourly-paid employees of WorldStaff and/or Carbel to recover unpaid overtime wages, liquidated damages, pre- and post-judgment interest, and reasonable attorneys' fees and costs as a result of Defendants' willful violations of the Pennsylvania Minimum Wage Act ("PMWA"), 43 P.S. § 333.101, *et seq*., and the Pennsylvania Wage Payment and Collection Law ("WPCL"), 43 P.S. § 260.1, *et seq*.

3. Defendant Carbel LLC ("Carbel") operates large warehouse and fulfillment facilities in Easton, Pennsylvania; Miami, Florida; Freeport, New York; and Norco, California, including the Easton, Pennsylvania warehouse located at 1520 Van Buren Road, where Plaintiff worked as a joint employee of Carbel and WorldStaff. Carbel provides third-party logistics and supply-chain management services in partnership with Arvato Supply Chain Solutions, a division of Bertelsmann SE & Co. KGaA, and publicly markets its operations under the "Carbel × Arvato" brand.

4. Defendant WorldStaff USA Tri-State LLC ("WorldStaff") is a national staffing agency headquartered and with its principal place of business in Bethlehem, Pennsylvania. WorldStaff employs hourly-paid workers across the United States, including warehouse associates, production employees, logistics personnel, and other non-exempt hourly staff assigned to client facilities in industries such as warehousing, manufacturing, and distribution. WorldStaff places and manages hourly-paid employees at warehouse and logistics facilities in Pennsylvania, New Jersey, New York, Massachusetts, Michigan, Illinois, Minnesota, Georgia, Florida, Alabama, Texas, Arizona, and other states. These employees include hourly-paid warehouse workers jointly employed by WorldStaff and Carbel LLC, such as Plaintiff.

5. Defendant Erika Mejía (also known as Erika Mejía Canales) is the founder, owner, and chief executive of WorldStaff.

6. Defendant Juan Alonso (also known as Juan Alonso Chacín) is a corporate officer and managing member of WorldStaff.

7. Plaintiff and the putative FLSA collective and Rule 23 class members are current and former hourly-paid employees of WorldStaff and/or Carbel within the last three (3) years, including hourly-paid warehouse workers jointly employed by both entities, who were deprived of legally mandated wages as a result of Defendants' uniform and unlawful pay practices, including:

> a. Failing to pay hourly-paid employees for all hours worked each day, including time spent riding company-provided transportation, walking long distances within the facility, waiting to clock in and out, and passing through mandatory security screening;
>
> b. Failing to pay hourly-paid employees at a rate of not less than one and one-half times their regular rate of pay for all hours worked in excess of forty (40) in a workweek, instead paying only their regular hourly rate for such overtime hours ("straight time for overtime"); and
>
> c. Failing to timely pay all wages, including overtime and straight-time wages for all hours worked, due and owing to Plaintiff and similarly situated employees.

8. As a result of these uniform pay policies and practices, Defendants failed to pay Plaintiff and other hourly-paid employees, including warehouse, logistics, and production workers jointly employed by WorldStaff and Carbel, for all hours worked, including required pre- and post-shift travel, ride, and waiting time associated with mandatory security screening and clocking procedures, and for all hours worked in excess of forty (40) in a workweek at the legally required overtime rate, and failed to timely pay all wages, including straight-time and overtime wages, due and owing to Plaintiff and similarly situated employees, in violation of the FLSA, PMWA, and WPCL.

9. Plaintiff asserts the FLSA claims individually and on behalf of two collectives

pursuant to 29 U.S.C. § 216(b):

> *(a) The WorldStaff Collective, defined as all current and former hourly-paid employees of WorldStaff USA Tri-State LLC in the United States, including those jointly employed by Carbel LLC, at any time from three (3) years prior to the commencement of this action through the date of judgment; and*
>
> *(b) The Carbel Collective, defined as all current and former hourly-paid employees of Carbel LLC in the United States, including those jointly employed by WorldStaff USA Tri-State LLC, at any time from three (3) years prior to the commencement of this action through the date of judgment.*

10. Plaintiff seeks to send notice pursuant to 29 U.S.C. § 216(b) to all Collective members informing them of their rights to assert FLSA claims in this collective action by filing consent forms.

11. Plaintiff asserts the PMWA and WPCL claims individually and on behalf of two classes pursuant to Fed. R. Civ. P. 23:

> *(a) The WorldStaff Class, defined as all current and former hourly-paid employees of WorldStaff USA Tri-State LLC in the Commonwealth of Pennsylvania, including those jointly employed by Carbel LLC, at any time from three (3) years prior to the commencement of this action through the date of judgment; and*
>
> *(b) The Carbel Class, defined as all current and former hourly-paid employees of Carbel LLC in the Commonwealth of Pennsylvania, including those jointly employed by WorldStaff USA Tri-State LLC, at any time from three (3) years prior to the commencement of this action through the date of judgment.*

12. Defendants have willfully and intentionally committed widespread violations of the above-described statutes and corresponding regulations, in the manner described herein.

## **JURISDICTION AND VENUE**

13. This Court has subject-matter jurisdiction over Plaintiff's FLSA claims pursuant to 28 U.S.C. § 1331 because Plaintiff's claims raise a federal question under 29 U.S.C. § 201, *et seq*.

14. This Court has jurisdiction over this action pursuant to 29 U.S.C. § 216(b), which provides, in relevant part, that suit under the FLSA "may be maintained against any employer . . .

in any Federal or State court of competent jurisdiction." See 29 U.S.C. § 216(b).

15. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367 because those claims derive from a common nucleus of operative facts as Plaintiff's federal claims.

16. The Court has general personal jurisdiction over Defendant WorldStaff because it is domiciled in Pennsylvania, with its headquarters and principal place of business located at 2919 Santee Road, Bethlehem, Pennsylvania 18020-2827.

17. This Court also has personal jurisdiction over Defendants Mejía and Alonso because they purposefully directed business activities toward and derived substantial benefits from employment operations in this District, out of which Plaintiff's claims arise.

18. This Court has general personal jurisdiction over Defendant Carbel pursuant to 42 Pa. Cons. Stat. § 5301(a)(3)(i) and (ii) because Carbel is a foreign limited liability company that is qualified and registered to do business in the Commonwealth of Pennsylvania and has thereby consented to the exercise of general personal jurisdiction by the courts of this Commonwealth.

19. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and (c) because Defendants reside in this District and a substantial portion of the events or omissions giving rise to the claims occurred within this District, including the employment of Plaintiff and other similarly situated employees at Defendants' warehouse facility in Easton, Pennsylvania.

## PARTIES

20. Defendant Carbel LLC is a foreign limited liability company formed under the laws of the State of Delaware and registered to do business in the Commonwealth of Pennsylvania under Filing No. 6728838, with an initial filing date of May 21, 2018.

21. Carbel maintains its principal address at 8201 NW 8th Avenue, Suite 100, Medley,

Florida 33178.

22. Carbel LLC's registered agent for service of process in Pennsylvania is Corporation Service Company, 8250 Industrial Blvd, Suite 100, Breinigsville, PA 18031.

23. Defendant WorldStaff USA Tri-State LLC is a limited liability company with its headquarters and principal place of business located at 2919 Santee Road, Bethlehem, Pennsylvania 18020-2827.

24. Defendant Erika Mejía (also known as Erika Mejía Canales) is an individual residing in Doral, Florida, who is the founder, owner, and managing officer of WorldStaff USA Tri-State LLC and related WorldStaff entities, and who exercises operational and financial control over their employment and payroll practices.

25. Defendant Juan Alonso (also known as Juan Alonso Chacín) is an individual residing in Doral, Florida, who serves as a corporate officer and managing member of WorldStaff USA Tri-State LLC and its affiliated entities, directing staffing operations and employment policies affecting employees in Pennsylvania and other states.

26. Plaintiff Joao Franganito is a resident of Lehigh County, Pennsylvania.

27. Plaintiff was jointly employed by Defendants as an hourly-paid warehouse worker from approximately September 2022 through October 2023.

28. Plaintiff was jointly employed by Defendants and performed hourly-paid warehouse work at Carbel's facility located at 1520 Van Buren Road, Easton, Pennsylvania 18045.

29. Plaintiff's written consent to become an FLSA party plaintiff is attached hereto as Exhibit 1.

## FACTUAL ALLEGATIONS[2]

### *Defendants Carbel and WorldStaff are Joint Employers*

30. Plaintiff brings this action individually and on behalf of all similarly situated hourly-paid employees of Defendants, including those jointly employed by WorldStaff and Carbel, in the Commonwealth of Pennsylvania and throughout the United States during the relevant statutory period, as members of the WorldStaff Collective, the Carbel Collective, the WorldStaff Class, and the Carbel Class.

31. Defendant Carbel is a logistics and warehouse services provider and employer with a principal place of business at 8201 NW 8th Avenue, Suite 100, Medley, Florida 33178, and registered to do business in the Commonwealth of Pennsylvania, where it operates a warehouse facility at 1520 Van Buren Road, Easton, Pennsylvania 18045.

32. Defendant Carbel jointly employs hourly-paid, non-exempt employees, including general warehouse workers, picking and packing associates, production workers, and other manual and support laborers, with Defendant WorldStaff at warehouse and logistics facilities in Pennsylvania and other locations covered by the FLSA.

33. These joint employees include workers directly employed by Carbel as well as those supplied by staffing companies such as WorldStaff. Their primary job duties include manual labor tasks such as picking, packing, loading, unloading, and handling goods and materials at Carbel-operated facilities.

34. Carbel oversees and directs these employees' day-to-day work, controls their schedules and working conditions, and jointly determines their compensation practices with

[2] The allegations in this Complaint, unless otherwise specified, refer to the time period of three years prior to the commencement of this action through the present.

WorldStaff.

35. Defendant WorldStaff is a staffing agency and employer headquartered at 2919 Santee Road, Bethlehem, Pennsylvania 18020-2827, with its principal place of business at the same address.

36. Defendant WorldStaff jointly employs hourly-paid, non-exempt employees, including but not limited to warehouse workers, picking and packing associates, production workers, and other manual and support laborers, with Defendant Carbel and other client companies at facilities in Pennsylvania and other locations covered by the FLSA.

37. These joint employees perform physical and operational tasks such as assembling, packaging, loading, unloading, and handling goods and materials, as well as related support functions integral to Defendants' business operations.

38. WorldStaff recruits, hires, and pays these employees, assigns them to client facilities, and jointly controls their work schedules, job duties, and compensation with Carbel and other clients.

39. Defendants Carbel and WorldStaff each operate an enterprise engaged in commerce or in the production of goods for commerce, as defined under the FLSA.

40. Carbel's annual gross volume of sales made or business done is not less than $500,000.00.

41. WorldStaff's annual gross volume of sales made or business done is not less than $500,000.00.

42. Carbel and WorldStaff each employ two or more employees engaged in commerce or in the production of goods for commerce, or who handle, sell, or otherwise work on goods or materials that have been moved in or produced for commerce by any person.

43. Defendants are the "employers" of Plaintiff and all similarly situated hourly-paid employees within the meaning of the FLSA, the PMWA, and the WPCL, and Plaintiff and the putative class and collective members are "employees" of Defendants within the meaning of those statutes.

44. WorldStaff and Carbel jointly employed Plaintiff and other similarly situated hourly-paid employees by sharing control over the terms and conditions of their employment, including hiring, job placement, supervision, scheduling, timekeeping, and pay.

45. WorldStaff recruits and hires warehouse employees, assigns them to Carbel's Easton, Pennsylvania facility, and processes their payroll, while Carbel directs and oversees their day-to-day work on the warehouse floor and controls the methods, pace, and productivity expectations.

46. On-site Carbel supervisors, including June and Denise, instruct WorldStaff-assigned workers on where to report, when to begin loading or picking tasks, and when to stop work, and they record and verify employee attendance through Carbel's time-clock system.

47. Carbel sets daily and weekly schedules, determines shift start and end times, and requires employees to arrive early for mandatory security screening, storage of personal items, and long walks between the entrance, time clocks, and work areas.

48. WorldStaff relies on Carbel's time records to determine hours worked, prepares and issues paychecks, and maintains employment documentation, but does so based on the hours Carbel reports and approves.

49. Both Carbel and WorldStaff retain authority to discipline or remove employees from assignments. Workers can be sent home, reassigned, or terminated by supervisors or managers from either company, and they must follow directives from both.

50. The warehouse work performed by Plaintiff and other hourly-paid employees is integral to Carbel's business operations and benefits both Carbel and WorldStaff, as Carbel depends on these workers to meet its client-delivery schedules and WorldStaff earns revenue from supplying and managing their labor.

51. Plaintiff and other workers used Carbel's equipment and timekeeping systems, wear identification badges issued for Carbel's facility, and followed Carbel's safety and security policies, including passing through checkpoints and restrictions on personal items.

52. Carbel controls access to the facility and requires employees to use company-provided buses between designated parking areas and the warehouse, while WorldStaff monitors attendance and payroll compliance through its administrative staff.

53. Plaintiff and other similarly situated employees are economically dependent upon both Carbel and WorldStaff, which jointly benefit from their labor and jointly control the terms and conditions of their employment.

54. As a result of this shared control and interdependence, Carbel and WorldStaff are joint employers of Plaintiff and the putative class and collective members within the meaning of the FLSA, PMWA, and WPCL.

***Defendants Mejía and Alonso are Individually Liable***

55. Defendants Mejía and Alonso are individually liable for the wage-and-hour violations alleged in this action because they directly control and manage WorldStaff's operations, payroll practices, and compliance with wage laws, and they personally participate in the unlawful pay decisions giving rise to this case.

56. Defendants Mejía and Alonso actively manage and control WorldStaff's day-to-day operations, including payroll administration, staffing assignments, and policies governing

the payment of wages and overtime to employees placed at client facilities such as Carbel's Easton, Pennsylvania warehouse.

57. Defendant Mejía is the founder, owner, and chief executive of WorldStaff and exercises ultimate decision-making authority over its finances, staffing contracts, and wage-payment policies. She oversees company budgeting, supervises administrative staff, and is responsible for ensuring compliance with wage-and-hour laws across all WorldStaff operations.

58. Defendant Alonso serves as a corporate officer and managing member of WorldStaff and oversees human resources, employee relations, and payroll processing. He communicates directly with employees about unpaid wage issues and personally signs correspondence addressing wage disputes and settlements.

59. On January 31, 2025, Defendant Alonso issued and signed a written letter on WorldStaff letterhead acknowledging a "payroll adjustment" and promising to pay Plaintiff $4,095.16 for previously unpaid overtime hours. Despite this admission, no payment was made.

60. Defendants Mejía and Alonso also communicate directly with employees, including those jointly employed by Carbel, through messaging applications such as WhatsApp. In these messages, WorldStaff representatives acting under their supervision confirm Plaintiff's total unpaid overtime hours and provide audit summaries showing 273.01 hours owed.

61. In these same messages, Defendants' representatives promise that payment would be sent by check and provide updates regarding mailing addresses and expected transfer timelines, demonstrating active managerial oversight and direct participation in the wage-payment process.

62. Defendants Mejía and Alonso maintain control over WorldStaff's bank accounts, payroll systems, and employment records, and their approval is required for the issuance

of employee checks and for the resolution of payroll disputes such as Plaintiff's.

63. Defendants Mejía and Alonso are aware that hourly-paid employees, including Plaintiff, regularly work more than forty hours per week without receiving overtime pay. They knowingly permit these pay practices to continue despite direct employee complaints and written acknowledgment of the amounts owed.

64. Because Defendants Mejía and Alonso exercise operational and financial control over WorldStaff, personally authorize payroll and settlement decisions, and communicate directly with employees about unpaid wages, they are "employers" of Plaintiff and the putative collective and class members within the meaning of the FLSA, PMWA, and WPCL and are individually liable for the violations alleged herein.

***Overtime Work Performed***

65. Defendants are contractually and statutorily obligated to pay each hourly-paid employee for all hours worked, including overtime hours, at the rates required by law.

66. Defendants require hourly-paid employees to record their time by clocking in and out through electronic timekeeping systems maintained at the worksites, which are monitored and administered jointly by WorldStaff and Carbel.

67. Defendants suffer and permit hourly-paid employees, including Plaintiff and the putative collective and class members, to regularly work more than forty (40) hours per week.

68. Hourly-paid employees working at Carbel's Easton, Pennsylvania facility, including those employed directly by Carbel or assigned through WorldStaff, typically work five to six days per week and are scheduled for shifts lasting between nine and twelve hours per day.

69. Employees' scheduled shifts commonly run from early morning through evening hours, and they are frequently required to report before their scheduled start time and remain after

their scheduled end time to complete loading, staging, or cleanup tasks.

70. Hourly-paid employees at the Easton facility, including Plaintiff (during his employment), are scheduled to work approximately five to six days per week, with shifts beginning at or around 7:00 a.m. and ending at approximately 4:00 p.m., following a one-hour meal period. In practice, employees frequently work beyond their scheduled end time, often until 6:00 p.m. or as late as 8:00 p.m., due to production demands and mandatory end-of-day cleanup.

71. Because of this scheduling structure, employees' total hours often exceed forty (40) per week, even before accounting for additional pre- and post-shift time spent undergoing security screening, walking long distances between work areas and time clocks, or waiting for company-provided transportation.

72. Plaintiff, for example, routinely worked between forty-five (45) and sixty (60) hours per week, and other hourly-paid employees at the Easton facility regularly work comparable or greater hours under similar conditions.

73. Defendants know or should know that hourly-paid employees regularly work more than forty (40) hours per week, because they create and approve the schedules, receive and review time and attendance reports, and track weekly output and staffing targets that cannot be met within a forty-hour workweek.

74. Despite this knowledge, Defendants do not pay overtime premiums for these hours, instead compensating employees at their regular hourly rates or failing to record all compensable time worked.

***Defendants' Wage-and-Hour Violations***

75. Hourly-paid employees assigned by WorldStaff to Carbel's Easton, Pennsylvania warehouse begin each workday by traveling from their homes to the facility, often

using company-provided shuttle buses that transport groups of workers to and from the warehouse. The time spent traveling to the warehouse on these buses occurs under Defendants' control and supervision and is for Defendants' benefit, yet it is not recorded or compensated as hours worked.

76. Upon arriving at the facility, employees are required to complete a series of steps to prepare for work that occur before they are permitted to clock in, including walking to designated locker areas to store personal items and passing through one or more security screening checkpoints where personal items are inspected or scanned and metal detectors are used. The time spent performing these required pre-shift tasks occurs under Defendants' direction and control but is not recorded or compensated as work time.

77. The distance between the facility entrance, locker areas, and workstations is substantial, requiring several minutes of walking each way. Employees are required to walk this distance before clocking in and after clocking out, yet this time is not captured by Defendants' timekeeping systems or compensated.

78. At the end of each shift, employees must perform similar steps before leaving the facility, including walking back across the warehouse, retrieving personal items from lockers, and passing through exit security checkpoints. Employees also wait in line with other workers to exit through limited security gates, which further extends the uncompensated time.

79. Employees frequently use company-provided shuttle buses to return home after their shifts. The time spent waiting for and riding these buses occurs after employees have clocked out and remains unpaid, even though it occurs on Defendants' premises or under Defendants' supervision.

80. The combined pre- and post-shift activities, including travel to and from the warehouse, walking to and from locker areas, passing through security screening, and waiting in

lines, regularly add up to approximately one hundred (100) minutes to each employee's workday, resulting in several hours of uncompensated work each week.

81. These pre- and post-shift activities are integral and indispensable to employees' principal work of loading, unloading, and handling goods within the warehouse and are performed under the direction and control of both WorldStaff and Carbel.

82. Defendants know or should know that these required activities occur daily because they control the facility layout, locker placement, security checkpoints, transportation procedures, and timekeeping systems. Despite this knowledge, Defendants fail to record or compensate employees for the time spent performing these tasks.

83. As a result of these policies and practices, Plaintiff and similarly situated employees regularly work additional uncompensated hours each week, including both straight-time and overtime hours, in violation of the FLSA, PMWA, and WPCL.

84. Defendants fail to pay hourly-paid employees, including those jointly employed by WorldStaff and Carbel, at a rate of not less than one and one-half times their regular rate of pay for all compensable hours worked in excess of forty (40) in a workweek, as required by the FLSA and PMWA.

85. Rather than paying all earned wages at the legally required rates, Defendants routinely underpay Plaintiff and other hourly-paid employees by compensating them only at their regular hourly rate for recorded time, while omitting payment for additional compensable hours.

86. For example, for the workweek of August 28 through September 3, 2023, Defendant WorldStaff issued Plaintiff a paycheck totaling $716.10 for 47.74 recorded work hours at a regular rate of $15.00 per hour. In addition to failing to pay the required overtime premium of one and one-half times his regular rate for hours worked over forty (40) in the week, Defendants

also failed to compensate Plaintiff for additional hours worked in that week that were not recorded, including pre- and post-shift time spent performing required tasks under Defendants' control, resulting in further unpaid straight-time and overtime wages..

87. Defendants' unlawful pay practices are not isolated or inadvertent. Defendants know that Plaintiff and other similarly situated hourly-paid employees regularly work more than forty (40) hours per week, and they knowingly fail to pay all such hours at the required overtime premium rate.

88. Plaintiff raised concerns regarding unpaid overtime with Defendant WorldStaff. WorldStaff acknowledged the existence of unpaid overtime compensation for Plaintiff's hours worked over forty (40) in a workweek and promised to provide Plaintiff with the total amount owed and the corresponding hours. After further communications and Plaintiff's threat of legal action in or around January 2025, WorldStaff offered an agreement to pay Plaintiff for a portion of the unpaid overtime hours at a rate of $7.50 per hour, totaling $2,047.57, but failed to pay this amount or fulfill the agreement. WorldStaff subsequently ceased responding to Plaintiff's communications, thereby breaking the agreement and failing to pay the full amount of overtime wages owed.

89. WorldStaff's own correspondence, including a letter dated January 31, 2025, admitted to a payroll error and promised to issue payment to Plaintiff totaling $4,095.16 to correct the error. Despite this admission and promise, Defendants failed to pay Plaintiff the full amount of wages owed, including overtime compensation, in a timely manner or at all.

90. Defendants' failure to pay overtime wages at the required rate and to pay for all compensable hours worked each day, including pre- and post-shift time spent riding company-provided transportation, walking long distances within the facility, waiting to clock in and out, and

passing through mandatory security screening, and their failure to timely pay all wages due, including overtime and straight-time wages, constitutes a willful violation of the FLSA, PMWA, and WPCL. Defendants' conduct was not in good faith or in conformity with or in reliance on any written administrative regulation, order, ruling, approval, or interpretation by the U.S. Department of Labor or the Pennsylvania Department of Labor & Industry, or any administrative practice or enforcement policy of such departments or bureaus.

91. Defendants' unlawful pay practices were applied uniformly to Plaintiff and all similarly situated hourly-paid employees, including those jointly employed by WorldStaff and Carbel, in Pennsylvania and throughout the United States during the relevant statutory period. Upon information and belief, Defendants' policies and practices of failing to pay for all compensable hours worked each day—including time spent riding company-provided transportation, walking long distances within the facility, waiting to clock in and out, and passing through mandatory security screening—paying straight time for overtime, and failing to timely pay all wages due affected numerous other hourly-paid employees employed by Defendants.

92. As a result of Defendants' unlawful pay and timekeeping policies and practices, there have been many weeks within the three years preceding the filing of this Complaint in which Defendants failed to pay Plaintiff and similarly situated hourly-paid employees, including those jointly employed by WorldStaff and Carbel, for all compensable hours worked each day and for all hours worked in excess of forty (40) in a workweek at a rate of not less than one and one-half times their regular rate of pay, and failed to timely pay all wages due, including straight-time and overtime compensation, in violation of the FLSA, PMWA, and WPCL.

## COLLECTIVE ACTION ALLEGATIONS

93. Plaintiff re-alleges and incorporates all previous paragraphs herein.

94. Plaintiff brings this action pursuant to Section 216(b) of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq*., as opt-in representative actions on behalf of two collectives of hourly-paid employees who have been affected by Defendants' common unlawful policies and practices, including failing to pay for all compensable pre- and post-shift time and failing to pay overtime compensation at the legally required rate, in violation of the FLSA and attendant regulations at 29 C.F.R. § 516, *et seq*.

95. Plaintiff brings this action pursuant to 29 U.S.C. § 216(b) of the FLSA on behalf of the WorldStaff Collective and the Carbel Collective, as previously defined in this Complaint. Each collective consists of current and former hourly-paid employees of the respective Defendant, including those jointly employed by both entities, who were subjected to Defendants' common unlawful policies and practices, including failing to pay for all compensable pre- and post-shift time and failing to pay overtime compensation at one and one-half times their regular rate of pay in violation of the FLSA.

96. As a result of Defendants' illegal policies and practices, there were many weeks in which members of the WorldStaff Collective and the Carbel Collective were not compensated at an overtime premium rate of not less than one and one-half (1.5) times their regular rate of pay for hours worked in excess of forty (40) per workweek, as required by the FLSA, and were not paid for all compensable pre- and post-shift time. Instead, Defendants paid Plaintiff and similarly situated employees their regular hourly rate for recorded hours only, omitting additional compensable time worked and failing to pay overtime premiums as required by law.

97. Plaintiff brings this collective action against Defendants to recover unpaid overtime compensation, liquidated damages, and reasonable attorneys' fees and costs pursuant to 29 U.S.C. § 216(b).

98. Defendants' violations of the FLSA are willful, as evidenced by written acknowledgments of unpaid hours and payroll "adjustments," partial payment offers, and subsequent refusals to pay the full amounts owed, and therefore Plaintiff seeks an additional, third year of limitations pursuant to 29 U.S.C. § 255(a).

99. Plaintiff seeks to send notice to all current and former hourly-paid employees within the WorldStaff Collective and the Carbel Collective, informing them of their rights to assert FLSA claims in this collective action by filing their individual consent forms, as provided by 29 U.S.C. § 216(b) and supporting case law.

100. Certification of the WorldStaff Collective and the Carbel Collective under the FLSA is appropriate because the employees described herein are "similarly situated" to Plaintiff under 29 U.S.C. § 216(b). The members of each collective are similarly situated because they were subject to the same or similar unlawful pay and timekeeping practices and their claims are based upon common factual and legal theories.

101. Plaintiff anticipates no difficulty in the management of these actions. This FLSA collective action presents claims that have often been prosecuted on a representative basis, and the identification of collective members and the computation of relief can be effectuated through a review of Defendants' payroll, timekeeping, transportation, and security access records.

102. Plaintiff and the putative FLSA collective members demand a trial by jury.

## RULE 23 CLASS ACTION ALLEGATIONS

103. Plaintiff re-alleges and incorporates all previous paragraphs herein.

104. Plaintiff seeks to maintain this action pursuant to Fed. R. Civ. P. 23, as opt-out class actions on behalf of two classes of hourly-paid employees, the WorldStaff Class and the Carbel Class, as previously defined herein, who have been affected by Defendants' common unlawful

policies and practices, including failing to pay for all compensable pre- and post-shift time, failing to pay overtime compensation at one and one-half times the regular rate for hours worked over forty (40) in a workweek, and failing to timely pay all wages due, in violation of the Pennsylvania Minimum Wage Act ("PMWA") and the Pennsylvania Wage Payment and Collection Law ("WPCL").

105. Plaintiff brings this Rule 23 class action on behalf of the WorldStaff Class and the Carbel Class, as previously defined in this Complaint. Each class consists of current and former hourly-paid employees of the respective Defendant, including those jointly employed by both entities, who worked in the Commonwealth of Pennsylvania at any time from three (3) years prior to the commencement of this action through the date of judgment.

106. Plaintiff brings this Rule 23 class action against Defendants to recover unpaid overtime wages, liquidated damages, pre- and post-judgment interest, and reasonable attorneys' fees and costs pursuant to the PMWA and WPCL.

107. The members of the Rule 23 classes are so numerous that joinder of all class members in this case would be impractical. Plaintiff reasonably estimates that there are a substantial number of class members in the Commonwealth of Pennsylvania who were employed by WorldStaff and/or Carbel, including those jointly employed by both entities. The Rule 23 class members should be easy to identify from Defendants' payroll, timekeeping, transportation, and security access records.

108. There is a well-defined community of interest among the Rule 23 class members, and common questions of law and fact predominate in this action over any questions affecting individual members.

109. These common questions include whether Defendants failed to pay for all

compensable pre- and post-shift time, including time spent riding company-provided transportation, walking within the facility, waiting to clock in and out, and passing through security screening; whether Defendants failed to pay overtime compensation at one and one-half times the regular rate for hours worked over forty (40) in a workweek; and whether Defendants failed to timely pay all wages due under the PMWA and WPCL.

110. Plaintiff's claims are typical of those of the Rule 23 class members in that they and all other class members suffered damages as a direct and proximate result of Defendants' common and systemic pay and timekeeping policies and practices. All class members were subject to the same corporate practices of WorldStaff and Carbel, as alleged herein, including failing to pay for all compensable pre- and post-shift time, failing to pay overtime wages at one and one-half times the regular rate for hours worked over forty (40) in a workweek, and failing to timely pay all wages due. Any lawsuit brought by an employee of Defendants would be identical to a suit brought by any other employee for the same violations, and separate litigation would risk inconsistent results.

111. All class members were treated the same or similarly by management with respect to compensation practices and the failure to pay legally required wages. This treatment included, but was not limited to, failing to pay for all compensable pre- and post-shift time—such as time spent riding company-provided transportation, walking long distances within the facility, waiting to clock in and out, and passing through mandatory security screening—failing to pay overtime wages at one and one-half times the regular rate for hours worked over forty (40) in a workweek, and failing to timely pay all wages due. Thus, there are common questions of law and fact that are applicable to each and every class member.

112. Plaintiff will fully and adequately protect the interests of the class members and has retained counsel who are qualified and experienced in the prosecution of wage-and-hour collective

and class actions. Plaintiff and his counsel have no interests that are contrary to, or in conflict with, the interests of the members of the WorldStaff Class or the Carbel Class, and will vigorously pursue relief on behalf of all class members.

113. Defendants' corporate-wide policies and practices affected all class members similarly, and Defendants jointly benefited from the same unlawful and unfair practices as to each class member. Plaintiff's claims arise from the same legal theories as those of all other class members, including violations of the PMWA and WPCL for failing to pay for all compensable pre- and post-shift time, failing to pay overtime wages at one and one-half times the regular rate, and failing to timely pay all wages due. Therefore, this case will be more manageable and efficient as a single Rule 23 class action encompassing the WorldStaff Class and the Carbel Class. Plaintiff and his counsel know of no unusual difficulties that would impede the fair and efficient management of this case.

114. Plaintiff and the Rule 23 class members demand a trial by jury.

**COUNT I**
**(Individual and 29 U.S.C. § 216(b) Collective Action Claims)**
**Violation of the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq*.**
**FAILURE TO PAY OVERTIME WAGES**

115. Plaintiff re-alleges and incorporates all previous paragraphs herein.

116. 29 U.S.C. § 207(a)(1) provides:

> [N]o employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.

117. Defendants suffered and permitted Plaintiff and the members of the WorldStaff Collective and the Carbel Collective to regularly work over forty (40) hours per week.

118. As a result of the policies and violations alleged herein, Defendants failed to pay Plaintiff and the members of the WorldStaff Collective and the Carbel Collective for all hours worked in excess of forty (40) hours in a workweek, including additional compensable pre- and post-shift time that was not recorded or paid.

119. Defendants failed to pay Plaintiff and the FLSA Collective members for all compensable hours worked each day, including time spent before and after scheduled shifts riding company-provided transportation, walking long distances within the facility, waiting to clock in and out, and passing through mandatory security screening. This uncompensated pre- and post-shift time constitutes work performed under Defendants' control and for Defendants' benefit, and should have been included in employees' recorded and paid hours under the FLSA.

120. Defendants paid Plaintiff and the members of the WorldStaff Collective and the Carbel Collective only their regular hourly rate for recorded hours worked and failed to compensate them for additional compensable time, including pre- and post-shift activities. For hours worked in excess of forty (40) in a workweek, Defendants likewise failed to pay the required overtime rate of one and one-half times the employees' regular rate of pay, instead paying straight time for overtime.

121. Defendants' conduct and practices, described herein, were willful, intentional, unreasonable, arbitrary, and in bad faith.

122. Because Defendants willfully violated the FLSA, a three (3) year statute of limitations shall apply to such violations pursuant to 29 U.S.C. § 255(a).

123. As a result of Defendants' uniform and common policies and practices described above, Plaintiff and the members of the WorldStaff Collective and the Carbel Collective were illegally deprived of overtime wages earned, in such amounts to be determined at trial, and are

entitled to recover overtime wages for all unpaid hours worked in excess of forty (40) in a workweek, liquidated damages, reasonable attorneys' fees, costs, and other compensation pursuant to 29 U.S.C. § 216(b).

**COUNT II**
**(Individual and on a Class Basis Pursuant to Fed. R. Civ. P. 23)**
**Violation of the Pennsylvania Minimum Wage Act 43 P.S. § 333.101, *et seq.***
**FAILURE TO PAY OVERTIME COMPENSATION**

124. Plaintiff re-alleges and incorporates all previous paragraphs herein.

125. The Pennsylvania Minimum Wage Act ("PMWA") provides that "[e]mploye shall be paid for overtime not less than one and one-half times the employee's regular rate of pay for all hours in excess of forty in a workweek." 43 P.S. § 333.104(c).

126. Defendants suffered and permitted Plaintiff and the members of the WorldStaff Class and the Carbel Class to regularly work over forty (40) hours per week for Defendants in many workweeks, including additional uncompensated pre- and post-shift time.

127. As a result of the policies and violations alleged herein, Defendants failed to pay Plaintiff and the members of the WorldStaff Class and the Carbel Class for all hours worked in excess of forty (40) hours in a workweek, including additional compensable time spent before and after scheduled shifts riding company-provided transportation, walking long distances within the facility, waiting to clock in and out, and passing through mandatory security screening.

128. Defendants paid Plaintiff and the members of the WorldStaff Class and the Carbel Class only their regular hourly rate for recorded hours worked and failed to compensate them for additional compensable pre- and post-shift time. For hours worked in excess of forty (40) in a workweek, Defendants likewise failed to pay the required overtime rate of one and one-half times the employees' regular rate of pay, instead paying straight time for overtime.

129. Defendants' conduct and practices, described herein, were willful, intentional,

unreasonable, arbitrary, and in bad faith.

130. As a result of Defendants' uniform and common pay and timekeeping policies and practices described above, Plaintiff and the members of the WorldStaff Class and the Carbel Class were illegally deprived of overtime compensation and other earned wages, in such amounts to be determined at trial, and are entitled to recover unpaid wages, pre- and post-judgment interest, reasonable attorneys' fees, costs, and other relief as provided by the PMWA.

**COUNT III**
**(Individual and on a Class Basis Pursuant to Fed. R. Civ. P. 23)**
**Violation of the Pennsylvania Wage Payment And Collection Law**
**43 P.S. § 260.1, *et seq.***
**FAILURE TO PAY ALL WAGES EARNED**

131. Plaintiff re-alleges and incorporates all previous paragraphs herein.

132. The Pennsylvania Wage Payment and Collection Law ("WPCL") requires every employer to "pay all wages, other than fringe benefits and wage supplements, due to his employes on regular paydays designated in advance by the employer." 43 P.S. § 260.3(a).

133. Defendants were contractually and statutorily obligated to pay Plaintiff and the members of the WorldStaff Class and the Carbel Class for all hours worked, including all compensable pre- and post-shift time and all overtime wages earned.

134. As a result of the policies and violations alleged herein, Defendants failed to pay Plaintiff and the members of the WorldStaff Class and the Carbel Class all wages due, including straight-time and overtime wages, in a timely manner.

135. Defendants also failed to pay for all compensable time worked each day, including time spent before and after scheduled shifts riding company-provided transportation, walking long distances within the facility, waiting to clock in and out, and passing through mandatory security screening, which constitutes hours worked under Pennsylvania law.

136. Defendant acknowledged the existence of unpaid overtime wages and promised to

pay Plaintiff, but failed to fulfill its agreement and ceased communications with Plaintiff regarding payment.

137. Defendants' conduct and practices, described herein, were willful, intentional, unreasonable, arbitrary, and in bad faith.

138. As a result of Defendants' conduct described above, Plaintiff and the members of the WorldStaff Class and the Carbel Class were illegally deprived of earned compensation, in such amounts to be determined at trial, and are entitled to recover all unpaid wages, liquidated damages as provided by 43 P.S. § 260.9a, pre- and post-judgment interest, reasonable attorneys' fees, costs, and any other relief available under the WPCL.

**RELIEF REQUESTED**

WHEREFORE, Plaintiff respectfully requests that this Court grant the following relief jointly and severally against all Defendants:

(A) A declaratory judgment that Defendants' wage practices alleged herein, including failing to pay for all compensable pre- and post-shift time and failing to pay overtime compensation at one and one-half times the regular rate, violate the overtime provisions of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq*.;

(B) A declaratory judgment that Defendants' wage practices alleged herein violate the Pennsylvania Minimum Wage Act ("PMWA"), 43 P.S. § 333.101, *et seq*., and the Pennsylvania Wage Payment and Collection Law ("WPCL"), 43 P.S. § 260.1, *et seq*.;

(C) An Order for injunctive relief requiring Defendants to comply with the FLSA, PMWA, and WPCL, and to cease all unlawful wage practices alleged herein, including the failure to pay for compensable pre- and post-shift time;

(D) Certifying this case as collective actions under 29 U.S.C. § 216(b) with respect to the

FLSA claims, and certifying the WorldStaff Collective and the Carbel Collective as defined herein;

(E) Certifying this case as a class action under Fed. R. Civ. P. 23 with respect to the PMWA and WPCL claims, and certifying the WorldStaff Class and the Carbel Class as defined herein;

(F) Ordering Defendants to disclose in computer-readable format, or in print if no such format is available, the names, addresses, e-mail addresses, telephone numbers, dates of birth, job titles, dates of employment, and locations of employment of all members of the WorldStaff Collective, the Carbel Collective, the WorldStaff Class, and the Carbel Class;

(G) Authorizing Plaintiff's counsel to send notice(s) of this action to all members of the WorldStaff Collective, the Carbel Collective, the WorldStaff Class, and the Carbel Class, including publication of notice in a manner reasonably calculated to apprise potential members of their rights to join or participate in this action;

(H) Designating Plaintiff as the representative of the WorldStaff Collective, the Carbel Collective, the WorldStaff Class, and the Carbel Class in this action;

(I) Designating the undersigned counsel as counsel for the WorldStaff Collective, the Carbel Collective, the WorldStaff Class, and the Carbel Class;

(J) Entering judgment for damages for all unpaid wages—including straight-time and overtime wages—and liquidated damages to which Plaintiff and the members of the WorldStaff Collective and the Carbel Collective are lawfully entitled under the FLSA;

(K) Entering judgment for damages for all unpaid wages—including unpaid pre- and post-shift time and overtime compensation—and pre- and post-judgment interest to which Plaintiff and the members of the WorldStaff Class and the Carbel Class are lawfully entitled under the PMWA;

(L) Entering judgment for all unpaid wages, liquidated damages as provided by 43 P.S. § 260.9a, and pre- and post-judgment interest to which Plaintiff and the members of the WorldStaff

Class and the Carbel Class are lawfully entitled under the WPCL;

(M) Awarding an incentive payment to Plaintiff for serving as the representative of the collectives and classes in this action;

(N) Awarding reasonable attorneys' fees and costs incurred by Plaintiff in this action as provided by the FLSA, PMWA, and WPCL;

(O) Entering judgment for any and all civil penalties and other remedies to which Plaintiff and the members of the collectives and classes may be entitled; and

(P) Such other and further relief as this Court may deem necessary, just, and proper.

## JURY DEMAND

Plaintiff, individually and on behalf of all other FLSA collective and Rule 23 class members, by and through his attorneys, hereby demands a trial by jury pursuant to Rule 38 of the Federal Rules of Civil Procedure and the court rules and statutes made and provided with respect to the above-entitled claims.

Respectfully Submitted,

Dated: October 30, 2025

**BROWN, LLC**

By: /s/ Jason T. Brown

Jason T. Brown
Nicholas Conlon (to seek PHV)
BROWN, LLC
111 Town Square Place, Suite 400
Jersey City, NJ 07310
T: (877) 561-0000
F: (855) 582-5279
jtb@jtblawgroup.com
nicholasconlon@jtblawgroup.com

*Lead Counsel for Plaintiff*

## CERTIFICATION OF USE OF GENERATIVE ARTIFICIAL INTELLIGENCE

Pursuant to the Court's policy regarding the use of Generative Artificial Intelligence ("AI") in filings, counsel for Plaintiff hereby certifies as follows:

(a) AI Tool Used: OpenAI's ChatGPT (GPT-5) was utilized to help with certain portion of the drafting process.

(b) Scope of Use: The AI tool was used to assist in the organization, formatting, and refinement of language in the *First Amended Collective and Class Action Complaint*. All factual allegations, legal claims, and citations were drafted, verified, and approved by counsel based on counsel's independent legal judgment, client communications, and review of evidentiary materials.

(c) Verification: Attorney Nicholas Conlon of Brown, LLC, who intends to seek permission to appear *pro hac vice*, has personally reviewed and verified the accuracy of all factual statements, citations to legal authority, and representations contained in this filing. No citation or factual assertion has been included without independent confirmation.

Dated: October 30, 2025

**BROWN, LLC**

By: /s/ Jason T. Brown
Jason T. Brown